UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| WILLIAM D. OWEN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 3:09-CV-369 |
| | ) | (VARLAN/SHIRLEY) |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## **REPORT AND RECOMMENDATION**

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 72(b) of the Federal Rules of Civil Procedure, and the Rules of this Court for a report and recommendation regarding disposition by the District Court of Plaintiff's Motion for Judgment on the Pleadings [Doc. 13] and Defendant's Motion for Summary Judgment [Doc. 20]. Plaintiff William D. Owen ("Plaintiff"), seeks judicial review of the decision of Administrative Law Judge ("ALJ") Robert L. Erwin denying him benefits, which was the final decision of Defendant Michael J. Astrue, Commissioner of Social Security ("the Commissioner").

On January 18, 2005, Plaintiff filed applications for disability insurance benefits ("DIB") and supplemental security income ("SSI"). On both applications, Plaintiff alleged a period of disability which began on May 20, 2001. [Tr. 17]. After his applications were denied initially and also denied upon reconsideration, Plaintiff requested a hearing. On April 23, 2007, a hearing was held before ALJ Robert L. Erwin to review the determination of Plaintiff's claim. [Tr. 609-36]. On June 6, 2007, the ALJ found that Plaintiff was not under a disability from May 20, 2001, through

the date of the decision. [Tr. 14-28]. On June 23, 2009, the Appeals Council denied Plaintiff's request for review; thus, the decision of the ALJ became the final decision of the Commissioner. [Tr. 7-9]. Plaintiff now seeks judicial review of the Commissioner's decision pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## I. ALJ FINDINGS

The ALJ made the following findings:

1. The claimant met the insured status requirements of the Social Security Act through December 31, 2006.

2. The claimant has not engaged in substantial gainful activity since May 20, 2001, the alleged onset date (20 CFR 404.1520(b), 404.1571 *et seq.*, 416.920(b) and 416.971 *et seq.*).

3. The claimant has the following severe impairments: status-post three lumbar discectomies and laminectomies, status-post L4-S1 fusion, status-post spinal cord simulator placement, post-laminectomy syndrome, pain disorder, and depression (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to lift and carry up to 20 pounds occasionally or 10 pounds frequently and sit, stand, or walk for up to 6 hours each out of an 8 hour day. The claimant cannot sit or stand more than 30 minutes continuously. The claimant cannot perform any climbing of ladders, ropes, or scaffolds, and cannot perform more than occasional climbing of ramps and stairs, stooping, bending, crouching, crawling, kneeling, squatting, or balancing. The claimant is capable of remembering locations and work-like procedures. He is able to understand, remember, and perform simple and detailed tasks. He will have some, but not substantial, difficulty in maintaining concentration. He can perform routine daily activities and complete a normal work week with acceptable performance and productivity. He is able to sustain an ordinary work routine around others and make acceptable simple work related decisions. The claimant will have some, but not

substantial, difficulty interacting with the general public, supervisors, and peers in the workplace without significantly disruptive distractions of confrontations. The claimant is able to maintain basic standards of neatness and cleanliness. The claimant is able to be aware of and appropriately respond to workplace changes and hazards. The claimant is able to travel in unfamiliar places. The claimant will have some, but not substantial, difficulty in setting and pursuing realistic goals in the work setting.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on May 12, 1960, and was 41 years old, which is defined as a younger individual on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1560(c), 404.1566, 416.960(c), and 416.966).

11. The claimant has not been under a disability, as defined in the Social Security Act, from May 20, 2001, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

[Tr. 20-27].

## II. DISABILITY ELIGIBILITY

An individual is eligible for DIB if he is insured for DIB, has not attained retirement age, has filed an application for DIB, and is under a disability. 42 U.S.C. § 423(a)(1). An individual is eligible for SSI if he has financial need and he is aged, blind, or under a disability. See 42 U.S.C. § 1382(a). "Disability" is the inability "[t]o engage in any substantial gainful activity by reason of

any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A). An individual shall be determined to be under a disability only if his physical and/or mental impairments are of such severity that he is not only unable to do his previous work, but also cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. 42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B).

Whether a DIB or SSI claimant is under a disability is evaluated by the Commissioner pursuant to a sequential five-step analysis summarized as follows:

> 1. If claimant is doing substantial gainful activity, he is not disabled.
>
> 2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.
>
> 3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.
>
> 4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.
>
> 5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity and vocational factors (age, education, skills, etc.), he is not disabled.

Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520); 20 C.F.R. § 416.920.

A claimant bears the burden of proof at the first four steps. Id. The burden of proof shifts to the Commissioner at step five. Id. At step five, the Commissioner must prove that there is work available in the national economy that the claimant could perform. Her v. Comm'r of Soc. Sec., 203 F.3d 388, 391 (6th Cir. 1999) (citing Bowen v. Yuckert, 482 U.S. 137, 146 (1987)).

### III. STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." Blakley v. Comm'r of Soc. Sec., 581 F.3d 399, 405 (6th Cir. 2009) (citing Key v. Callahan, 109 F.3d 270, 273 (6th Cir. 1997)). If the ALJ applied the correct legal standards and his findings are supported by substantial evidence in the record, his decision is conclusive and must be affirmed. Warner v. Comm'r of Soc. Sec., 375 F.3d 387, 390 (6th Cir. 2004); 42 U.S.C. § 405(g). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 241 (6th Cir. 2007); Richardson v. Perales, 402 U.S. 389, 401 (1971) (citing Consol. Edison v. NLRB, 305 U.S. 197, 229 (1938)). It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. Crisp v. Sec'y of Health & Human Servs., 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." Buxton v. Halter, 246 F.3d 762, 773 (6th Cir. 2001) (quoting Mullen v.

Bowen, 800 F.2d 535, 545 (6th Cir. 1986)). Therefore, the Court will not "try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." Walters, 127 F.3d at 528.

In addition to reviewing the ALJ's findings to determine whether they were supported by substantial evidence, the Court also reviews the ALJ's decision to determine whether it was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings[1] promulgated by the Commissioner. See Wilson v. Comm'r of Soc. Sec., 378 F.3d 541, 544 (6th Cir. 2004) ("Although substantial evidence otherwise supports the decision of the Commissioner in this case, reversal is required because the agency failed to follow its own procedural regulation, and the regulation was intended to protect applicants like [plaintiff]."); id. at 546 ("The general administrative law rule, after all, is for a reviewing court, in addition to whatever substantive factual or legal review is appropriate, to 'set aside agency action...found to be...without observance of procedure required by law.'") (quoting 5 U.S.C. § 706(2)(d) (2001)); cf. Rogers, 486 F.3d at 243 (holding that an ALJ's failure to follow a regulatory procedural requirement actually "denotes a lack of substantial evidence, even when the conclusion of the ALJ may be justified based upon the record"). "It is an elemental principal of administrative law that agencies are bound to follow their own regulations," and the Court therefore "cannot excuse the denial of a mandatory procedural protection . . . simply because there is sufficient evidence in the record" to support the Commissioner's ultimate disability determination. Wilson, 378 F.3d at 545-46. The Court may, however, decline to reverse and remand the Commissioner's determination

---

[1] See Blakley, 581 F.3d at 406 n.1 ("Although Social Security Rulings do not have the same force and effect as statutes or regulations, '[t]hey are binding on all components of the Social Security Administration' and 'represent precedent final opinions and orders and statements of policy' upon which we rely in adjudicating cases.") (quoting 20 C.F.R. § 402.35(b)).

if it finds that the ALJ's procedural errors were harmless.

An ALJ's violation of the Social Security Administration's procedural rules is harmless and will not result in reversible error "absent a showing that the claimant has been prejudiced on the merits or deprived of substantial rights because of the [ALJ]'s procedural lapses." Wilson, 378 F.3d at 546-47. Thus, an ALJ's procedural error is harmless if his ultimate decision was supported by substantial evidence *and* the error did not deprive the claimant of an important benefit or safeguard. See id. at 547 (holding that an ALJ's violation of the rules for evaluating the opinion of a treating medical source outlined in 20 C.F.R. § 404.1527(d) was a deprivation of an "important procedural safeguard" and therefore not a harmless error). If a procedural error is not harmless, then it warrants reversing and remanding the Commissioner's disability determination. Blakley, 581 F.3d at 409 (stating that a procedural error, notwithstanding the existence of substantial evidence to support the ALJ's ultimate decision, requires that a reviewing court "reverse and remand unless the error is a harmless *de minimis* procedural violation").

On review, Plaintiff bears the burden of proving her entitlement to benefits. Boyes v. Sec'y. of Health & Human Servs., 46 F.3d 510, 512 (6th Cir. 1994) (citing Halsey v. Richardson, 441 F.2d 1230 (6th Cir. 1971)).

IV.     **ANALYSIS**

Plaintiff raises just one argument on appeal: he contends that the ALJ's determination of his physical residual functional capacity ("RFC") was not supported by substantial evidence. [Doc. 14 at 9, 14]. Plaintiff argues that the ALJ erred when determining his physical RFC by "failing to give appropriate weight to the opinion of [his] long-time treating physician, Dr. Crystal Gue, M.D." [Doc. 14 at 6, 9]. Plaintiff asserts that Dr. Gue opined that he has physical limitations that render

7

him unable to engage in any substantial gainful activity. See [Doc. 14 at 9] ("Dr. Gue opines that Mr. Owen cannot be expected to be reliable in attending an eight-hour day, forty-hour work week and has a medical need to be absent on a chronic basis") (citing [Tr. 507]); [Doc. 14 at 4] ("On February 2, 2006, Dr. Gue wrote: '[p]atient has essentially been disabled over the last several years secondary to severe pain following back surgery.'") (quoting [Tr. 513]).

Plaintiff argues that the ALJ's decision to afford Dr. Gue's opinion little weight was error because it was "not supported by substantial evidence." [Doc. 14 at 9]; [Doc. 14 at 14] ("The ALJ's rejection of [Dr. Gue]'s opinion is not supported by substantial evidence in this case."); see [Doc. 14 at 12] ("the ALJ's rejection of [Dr. Gue]'s opinion is not supported by the weight of the medical evidence"). Plaintiff further argues that this error caused the ALJ to make a physical RFC determination that was incorrect and unsupported by the record. Plaintiff concludes that the ALJ's finding that he has the physical RFC to "lift and carry up to 20 pounds occasionally or 10 pounds frequently and sit, stand, or walk for up to 6 hours each out of an 8 hour day," [Tr. 23], was not supported by substantial evidence.

In response, the Commissioner contends that the ALJ considered the entire record, and that substantial evidence supported his determination of Plaintiff's physical RFC. [Doc. 21 at 14]. The Commissioner asserts that the ALJ properly considered Dr. Gue's opinion, and he points out that "Dr. Gue's opinion is not that far removed from the ALJ's ultimate RFC finding." [Doc. 21 at 12]; see [Doc. 21 at 13] ("even though the ALJ rejected the parts of Dr. Gue's opinion that were not supported by the record, he did adopt those credible portions of the opinion"). The Commissioner argues that the ALJ provided good reasons for rejecting parts of Dr. Gue's opinion. [Doc. 21 at 12]. He further argues that the ALJ's decision to give little weight to Dr. Gue's opinion that Plaintiff was disabled was both reasonable and supported by substantial evidence.

The Court agrees with the Commissioner and finds that the ALJ properly considered Dr. Gue's opinion when determining Plaintiff's RFC. Dr. Gue provided a "Medical Opinion Form (physical)" [Tr. 507-09] on February 2, 2006. On the form, Dr. Gue opined that Plaintiff was capable of the following: sitting for 5 hours during an 8 hour workday, one hour at a time; standing or walking for 4 hours during an 8 hour workday, one hour at a time; lifting and carrying 1-10 pounds frequently, 11-20 pounds occasionally, and 21-25 pounds infrequently; bending at the waist infrequently; reaching above the shoulders occasionally; standing on a hard surface infrequently; and using hands for fine manipulation occasionally. [Tr. 507]. Dr. Gue also opined that Plaintiff was incapable of lifting and carrying 50 pounds or greater, that he could not "reasonably be expected to be reliable in attending an 8 hour day, 40 hour work week," and that he would have a "reasonable medical need to be absent from a full time work schedule on a chronic basis." [Tr. 508-09].

The ALJ accurately recapitulated Dr. Gue's opinion in his narrative decision. [Tr. 21]. He then expressly explained how he considered the opinion:

> Though somewhat consistent with the residual functional capacity outlined below, this functional assessment is afforded little weight because *it is inconsistent with the claimant's post clinical exams, his post-2002 fusion conservative treatment, and his reported daily activities*, outlined below. Additionally, it contains manipulative and reaching restrictions that are *unsupported by any upper extremity physical impairment*. Moreover, [Dr. Gue]'s opinion that the claimant would likely miss 4 or more days of work a month was highly questionable given the claimant's admitted *post-onset work activity*, outlined below.

[Tr. 21] (emphasis added); see [Tr. 25] (repeating this explanation).

It is clear that the ALJ provided five reasons, italicized above, for his decision to give Dr. Gue's opinion little weight. Plaintiff argues that these reasons were invalid and unsupported by the record. [Doc. 14 at 9]. The Court disagrees, and finds that three of the ALJ's reasons for

9

discounting Dr. Gue's opinion were supported by substantial evidence.

When determining a claimant's physical RFC, an ALJ is required to evaluate every medical opinion in the record, regardless of its source. 20 C.F.R. § 404.1527(d). A "medical opinion" is defined as a statement from a physician, psychologist, or "other acceptable medical source" that reflects "judgments about the nature and severity of [a claimant's] impairment(s)." 20 C.F.R. § 404.1527(a)(2). A medical source is considered a *treating* medical source if he has provided medical treatment or evaluation, and he has had an ongoing treatment relationship with the claimant "with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation [that is] typical for the [treated condition(s)]." Blakley, 581 F.3d at 407 (quoting 20 C.F.R. § 404.1502).

An ALJ "must" give a medical opinion provided by a *treating* source controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques," and it is "not inconsistent with the other substantial evidence in the case record." Wilson, 378 F.3d at 544; see 20 C.F.R. § 404.1527(d)(2). If an ALJ decides not to give controlling weight to the medical opinion of a treating source, he is required to explain why in his narrative decision. 20 C.F.R. § 404.1527(d)(2); Shelman v. Heckler, 821 F.2d 316, 321 (6th Cir. 1987) (stating that while an ALJ is not bound by the opinions of a plaintiff's treating physicians, he is required to set forth some basis for rejecting these opinions). The ALJ is also required to provide in his narrative "good reasons" justifying the weight that he actually gave to a treating source's non-controlling opinion. 20 C.F.R. § 404.1527(d)(2); Blakley, 581 F.3d at 401 (remanding a claim to the Commissioner "because the ALJ failed to give good reasons for discounting the opinions of [the claimant]'s treating physicians"). In order to determine the proper weight to give to a treating source's opinion, the ALJ must conduct a six-factor analysis. See 20 C.F.R. § 404.1527(d)(2). The ALJ must consider (1) the

10

length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the supportability of and evidentiary basis for the opinion; (4) the consistency of the opinion with the record as a whole; (5) the specialization of the source; and (6) anything else that tends to support or contradict the opinion. 20 C.F.R. § 404.1527(d)(2)-(6).

In this case, Dr. Gue was a treating source. Her opinion was therefore entitled to controlling weight as long as it was "well-supported by medically acceptable clinical and laboratory diagnostic techniques," and "not inconsistent with the other substantial evidence in the case record." Wilson, 378 F.3d at 544. But the ALJ found that Dr. Gue's opinion *was* inconsistent with substantial evidence in Plaintiff's record, namely (1) post clinical examination notes, (2) documentation of post-2002 fusion conservative treatment,(3) Plaintiff's reported daily activities, (4) Plaintiff's post-onset work activity, and (5) the lack of any documentation of an upper extremity impairment. [Tr. 21]. The Court finds that the ALJ did not adequately explain how Dr. Gue's opinion was inconsistent with post clinical examination notes. The Court also finds that the ALJ failed to justify his characterization of Plaintiff's post-2002 fusion treatment history as "conservative." Accordingly, the ALJ's first two reasons for discounting Dr. Gue's opinion were not supported by substantial evidence.

However, the Court finds that the ALJ's last three reasons for discounting Dr. Gue's opinion were well-explained and supported by substantial evidence. The ALJ adequately explained how Dr. Gue's opinion was inconsistent with Plaintiff's self-reports of work-related and daily activities.[2]

---

[2] The ALJ described Plaintiff's "admitted post-onset work activity" and his reported daily activities as follows:

> The claimant's reported daily and social activities are not suggestive of a totally disabled individual. In October 2001, 5 months after he alleged that he became disabled, the claimant admitted to his treating

And the ALJ was correct that there was nothing in the record indicating that Plaintiff had an upper extremity impairment that limited his ability to reach overhead or manipulate.[3] The Court finds that it was reasonable for the ALJ to interpret Plaintiff's self-reports of his work-related and daily activities as being inconsistent with Dr. Gue's functional assessment. The Court further finds that this inconsistency was a valid reason for discounting Dr. Gue's opinion. See 20 C.F.R. § 404.1527(d). Accordingly, the Court concludes that the ALJ provided good reasons that were supported by substantial evidence for his decision to give Dr. Gue's opinion little weight in the RFC determination process.

> neurosurgeon that he was moving furniture around his home. In November 2001, the claimant reported that he had been rebuilding the motor of his car for a month. In October 2002, the claimant reported to his treating orthopedic surgeon that he performed routine maintenance on his car such as changing spark plugs and changing oil. In December 2003, the claimant reported to [Dr. Gue] that he was able to work a full work week. In January 2004, he told her that he had been working on roofs. In August 2004, he admitted working for his father-in-law. In November 2004, the claimant lacerated his finger while cutting metal. In April 2005, the claimant reported to the psychological consultative examiner that he had worked as a welder through January 2003 and that he had worked 5 hours a day building mini-barns from March 2003 through September 2004. In June 2005, the claimant and his wife reported that he could prepare simple meals, do small amounts of laundry, and understand and follow television programs. At the hearing, the claimant also admitted that he worked as an assembler and clean up worker at an electronics factory in 2003 for a couple of months.

[Tr. 26] (internal citations omitted).

The Court finds that the ALJ's summary of Plaintiff's self-reports was fair and supported by substantial evidence.

[3] In his Memorandum, Plaintiff fails to point to anything in the record that supported Dr. Gue's opinion [Tr. 507] that he was only "occasionally" capable of reaching above his shoulders and using his hands for fine manipulation.

## V. CONCLUSION

For the foregoing reasons, it is hereby **RECOMMENDED**[4] that the Commissioner's Motion for Summary Judgment **[Doc. 20]** be **GRANTED**, and Plaintiff's Motion For Judgment on the Pleadings **[Doc. 13]** be **DENIED**.

Respectfully submitted,

ENTER:

s/ C. Clifford Shirley, Jr.
United States Magistrate Judge

---

[4] Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b), Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466 (1985). The district court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive, or general. Mira v. Marshall, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. Smith v. Detroit Fed'n of Teachers, 829 F.2d 1370 (6th Cir. 1987).